580 So.2d 234 (1991)
Leon HIGHSMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 89-3114.
District Court of Appeal of Florida, First District.
May 8, 1991.
*235 Barbara M. Linthicum, Public Defender and P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Edward C. Hill, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Leon Highsmith has appealed from his conviction and sentence for possession of a firearm by a convicted felon. He alleges as error the trial court's admission of evidence concerning his use of aliases, the giving of a jury instruction on flight, the prosecutor's comment on his failure to call certain witnesses, and his classification as a habitual offender based on two felony convictions which were imposed on the same date. We affirm as to all issues except the last, as to which we reverse and remand for resentencing.
Highsmith was initially charged with carrying a concealed firearm, after officers observed him hiding something under his car seat, which was revealed to be a semiautomatic pistol. After his arrest, Highsmith presented a driver's license bearing the name "Jeffrey Craig Johnson." Observing that the picture on the license did not match Highsmith's face, the officer asked his true name. Highsmith responded with "Sean Eric Brown," under which name he was charged by information with carrying a concealed firearm. When his actual identity was ascertained, an amended information was filed to add a charge of possession of a firearm by a convicted felon.
The two counts were severed for trial, and the possession count was tried first. The state presented the testimony of the arresting officers, which included, over defense objection, Highsmith's use of the false driver's license, and his identification of himself to the officers as "Sean Eric Brown." The officers also testified that a computer check of the second false name revealed no criminal record.
Highsmith testified on his own behalf. He stated that, on the night of his arrest, he had driven to a restaurant with his cousin, Eric Walker, and a friend, Jody Porter. Once they were there, the officers harrassed them without apparent reason. He conceded that the pistol was concealed under his car seat, but testified that it was not his, that he did not put it there, and did not know if it belonged to Walker or Porter. Neither of these individuals was called to testify by the defense, and their absence was noted by the prosecution over defense objection.
During the subsequent conference on jury instructions, the state requested the following charge on flight, based on Highsmith's use of false identities at the time of his arrest:
When a suspected person in any manner endeavors to escape, or evade threatened prosecution by flight, concealment, resistance to lawful arrest, or other after-the-fact indication of a desire to evade prosecution, such fact may be one of a series of circumstances from which guilt may be inferred.
The defense objected, arguing that there was no evidence of flight or concealment in the case. The trial judge overruled the objection, citing Highsmith's use of a false name, and the instruction was given to the jury.
The jury found Highsmith guilty as charged. The case proceeded to sentencing, the state having given proper notice of intent to seek sentencing as an habitual offender. The court sentenced Highsmith as an habitual offender in reliance on two prior felony convictions, possession of cocaine and carrying a concealed firearm, over defense objection that the convictions were both imposed on October 21, 1988.
Highsmith alleges first that the trial court erred in allowing the admission of evidence showing that he used aliases. He cites Lee v. State, 410 So.2d 182 (Fla.2d DCA 1982) for the proposition that such evidence conveys the impression to the jury that the defendant belongs to a "criminal class." However, the Lee court acknowledged that the admission of aliases was not per se reversible error, and that reversible prejudice existed only because the reference to Lee's aliases was accompanied by *236 testimony that they had been obtained from an FBI "rap" sheet. See also Lamb v. State, 354 So.2d 124 (Fla.3d DCA 1978) and Rodriguez v. State, 413 So.2d 1303 (Fla.3d DCA 1982) (no prejudice exists where the actual term "alias" was not employed).
Here, a review of the record indicates that the witness who testified to Highsmith's use of false names did not use the term "alias," but simply testified to Highsmith's actions in presenting a false driver's license and giving another false name when the license was questioned. More importantly, the Lee court's primary concern regarding alias evidence was the tendency of the public to associate it with previous criminal activity. As the state points out, the jury could surmise from the crime for which Highsmith was on trial, possession of a firearm by a convicted felon, that he had a prior felony record. We do not believe that additional prejudice as to previous criminal activity was likely to result from the false name testimony. We affirm on this issue.
Highsmith next alleges that it was error to instruct the jury on flight, citing Merritt v. State, 523 So.2d 573 (Fla. 1988). In that case, a first-degree murder defendant escaped while en route to Florida to stand trial on other, unrelated charges. The state was permitted to introduce evidence of the escape at the first-degree murder trial and to have the jury charged on it as an additional circumstance of guilt. The supreme court reversed, finding that it was unreasonable to allow the jury to connect the escape with guilt of first-degree murder, when it was equally as likely that the escape was to evade prosecution for the unrelated charges.
The appellant argues that, as in Merritt, it was just as likely that Highsmith concealed his true identity to evade prosecution for the crime of driving without a license as for the weapon charge, and that it was therefore error to allow the jury to connect the concealment with guilt of possession of a firearm by a convicted felon. If the only "concealment" offered by Highsmith was the use of someone else's driver's license, this argument would be more persuasive. However, the record shows that Highsmith offered a second false name, under which no criminal record was listed, immediately after the discovery of the pistol in his car. We find that the jury could therefore reasonably infer that the further concealment of his identity was to avoid prosecution for the crime charged, and thus that the flight instruction was permissible.
The next issue raised by Highsmith, the prosecutorial comment on his failure to offer the testimony of his companions on the night of his arrest, presents a very close question. The general rule in this area is that an accused criminal defendant may bring his own credibility into issue by taking the stand and testifying. In so doing, if the defendant makes it appear that a potential witness could exonerate him, then, to that extent, the prosecuting attorney has the right to comment. Romero v. State, 435 So.2d 318, 320 (Fla. 4th DCA 1983).
In Crowley v. State, 558 So.2d 529 (Fla. 4th DCA 1990), cited by appellant in support of his argument on this issue, the facts show that the defendant did not open the door in any manner to a prosecutorial comment on the failure to call witnesses. Here, Highsmith took the stand and testified that the events on the night of the arrest took place in the presence of two individuals, Walker and Porter. He testified to unprovoked police harassment, and that he did not place anything under the seat, but was merely reaching to unlock the car doors for his companions.
While Highsmith did not explicitly state that these witnesses would support his story, Romero requires only that the defendant make it appear that potential witnesses could exonerate him. We find that Highsmith's testimony regarding the presence of his companions, one of whom was a family member, and his denial that events occurred as represented by the police, "make it appear" that the witnesses could support his version of the story. We therefore affirm on this issue as well.
*237 However, with regard to the imposition of habitual offender status based on two previous felony convictions which were imposed on the same date, we reverse on authority of Barnes v. State, 576 So.2d 758 (Fla. 1st DCA 1991), and remand for resentencing.
Affirmed in part, and reversed and remanded for resentencing.
MINER, J., concurs.
ERVIN, J., dissents with opinion.
ERVIN, Judge, dissenting.
I would reverse as to the issues relating to the trial court's admission of testimony showing that appellant gave false names when first apprehended, its instruction to the jury on flight, and its refusal to grant a motion for mistrial regarding the prosecutor's comment on appellant's failure to call certain witnesses, and would therefore remand the case for new trial. Consequently, I would not reach the sentencing error addressed by the majority.
As to the first issue, relating to the admission of evidence pertaining to the appellant's use of false names, I agree with appellant that his concealment of his true identity related as much to the earlier offense of driving without a license as to that of possession of a firearm by a convicted felon. Consequently, in my judgment, the trial court erred by allowing such evidence to be admitted during the trial on the charge of possession of the firearm by a convicted felon. Furthermore, the fact that the defendant gave a second false name immediately following discovery of the pistol in his car does not affect my conclusion, because that evidence alone is insufficient to clearly establish a consciousness of guilt as to the offense tried. See Finlay v. State, 424 So.2d 967 (Fla. 3d DCA 1983).
As to the instruction to the jury on flight, which was based solely upon the appellant's use of false names, the rule has long been recognized that such instructions have been sustained in cases only in which the evidence convincingly displayed the fact of flight. See, e.g., Proffitt v. State, 315 So.2d 461 (Fla. 1975), judgment aff'd, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Batey v. State, 355 So.2d 1271 (Fla. 1st DCA 1978); Martinez v. State, 346 So.2d 1209 (Fla. 3d DCA), cert. denied, 354 So.2d 983 (Fla. 1977). Even if we were to assume it is appropriate to apply the flight instruction to a circumstance involving a defendant's use of aliases, the evidence must be relevant to the offense then being tried. As previously explained under the prior issue, because the appellant's concealment of his actual identity pertained as much to an unrelated offense as to those for which he was tried, the evidence as it related to the charged offenses was no more consistent with guilt than with innocence. Cf. Proffitt, 315 So.2d at 465 (evidence of a defendant's flight following a crime is, by itself, as consistent with innocence as with guilt).
Finally, I would reverse as to the prosecutor's comment on the appellant's failure to call certain witnesses who were present at the time of his arrest. In my judgment this was an altogether improper comment, because it indicated to the jury that the burden was on the defendant to present exculpatory evidence. The rule is of course that comments such as those made at bar by the prosecutor generally constitute prejudicial and reversible error. Romero v. State, 435 So.2d 318, 319 (Fla. 4th DCA 1983), review denied, 447 So.2d 888 (Fla. 1984). A recognized exception to this rule permits a prosecuting attorney to comment upon the failure of the defense to call a witness under circumstances in which the defendant's testimony "relies upon facts which could only be elicited from such witness whose testimony consequently is assumed to be relevant, material and favorable to the defense." Id. at 320. The exception referred to in Romero would apply to a situation, for example, in which defense counsel has first commented on the failure of the state to call any of the other witnesses who had been present when the police approached a group at the scene of the arrest. Defense counsel made no such comment in the case at bar.
*238 Nor can I conceive that the defendant's voluntary decision to take the stand and testify in his behalf regarding the circumstances which occurred before, during, and after his arrest in any way opened the door to the statements made by the prosecuting attorney. The defendant's testimony referring to other persons at the scene did little more than corroborate the prior testimony of the arresting officer relating that there were two or three other persons in the car with appellant. Although appellant denied that he possessed a firearm, he testified that he did not know whether either of the two other passengers in the car had any kind of firearm or other weapon in their possession. I fail to see any relevancy to the applicability of the invited-error doctrine and would therefore reverse appellant's conviction and remand the case for new trial.